**Howard HOFFMAN, Administrator of the Estate of Timothy Hoffman, and individually, and Carol Hoffman, Plaintiffs,**

v.

**UNITED STATES of America, Defendant & Third–Party Plaintiff,**

v.

**AIRWAY MOVING AND STORAGE, INC., Third–Party Defendant.**

No. 93–6–CIV–4–H.

United States District Court,
E.D. North Carolina,
New Bern Division.

June 13, 1994.

Franklin D. Pope, Robinson, Pope and Pope, Jacksonville, NC, for plaintiffs.

Linda Kaye Teal, Asst. U.S. Atty., Raleigh, NC, for the U.S.

Steven M. Sartorio, Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, Raleigh, NC, for defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on defendant's motion for summary judgment and third-party defendant's motion for summary judgment. Plaintiffs brought this action for wrongful death after their child was struck by a truck after leaving the defendant's bookmobile. The defendant, the United States, filed a third-party complaint against the operator of the truck which actually struck and killed the child. In a Memorandum and Recommendation ("M & R") filed May 6, 1994, United States Magistrate Judge Charles K. McCotter, Jr., recommended that the defendant's motion for summary judgment be granted. Judge McCotter also recommended that if the court were to find a genuine issue of material fact as to the government's liability, the third party defendant's motion for summary judgment should be granted. Plaintiffs and defendant filed objections to the M & R within the time allotted, and this matter is ripe for decision.

As grounds for its motion for summary judgment, defendant states that it owed no duty to the decedent. The Magistrate Judge found that, under North Carolina law, an owner of a business owes no duty to an invitee injured off the premises. The Magistrate Judge also found that the defendant's duty as an operator of a motor vehicle was limited to providing a safe place of exit. The court notes that this standard is supported by North Carolina case law. Absent some additional circumstance, such as giving a confusing signal or blinding the pedestrian with the automobile's headlights, an operator of a motor vehicle is only required to let a child out of the vehicle in a place of safety. *Colson v. Shaw,* 46 N.C.App. 402, 411, 265 S.E.2d 407, 411 (1980).

Plaintiffs object to one finding of fact and four conclusions of law. First, plaintiff objects to the proposed finding of fact that the decedent leaned into the bookmobile instead of boarding the bookmobile for at least one minute. Plaintiff objects to the conclusion of law that its position is that the defendant had four specific legal duties. Plaintiffs instead state that the defendant breached its duty to use ordinary care. Plaintiffs further contend that the government did not fulfill its duty of ordinary care in that there was not a safe place to exit the bookmobile. Plaintiffs object to the Magistrate Judge's conclusion that additional warning devices were not necessary for the safety of the bookmobile, and finally, to the conclusion that the bookmobile operators cannot simultaneously operate the bookmobile and operate as crossing guards.

Plaintiffs' objections do not alter the court's conclusions. Whether the decedent was in the bookmobile for a minute or for an hour has no bearing on whether the defendant owed some duty of care to him. Under North Carolina law, that duty was only to provide a safe place of exit and entry into the motor vehicle. *See id.* There is no dispute that both the entrance and the exit to the bookmobile were on the right side of the vehicle, with entry and exit being made on the grass as opposed to being in the road itself. Accordingly, the defendant satisfied its duty of care to the decedent. Because the law requires only a safe place of entrance

and exit to the vehicle, plaintiffs' additional objections are without merit.

Upon a full and careful review of the M & R, the court finds that the findings and conclusions of the Magistrate Judge are in all respects proper and in accordance with the law. Therefore, the court hereby ADOPTS the M & R as its own. Defendant's motion for summary judgment is GRANTED. As the third-party defendant's liability is predicated on defendant's liability, the motion for summary judgment by the third party defendant is DISMISSED as moot.

## MEMORANDUM AND RECOMMENDATION

McCOTTER, United States Magistrate Judge.

This matter is before the court on the defendant's motions to dismiss and, in the alternative, for summary judgment. Also before the court is the third-party defendant's motion for summary judgment. This case results from the tragic death of Timothy Hoffman (Timothy) on 12 December 1989. The government's motion for summary judgment should be allowed, because the United States did not breach any duty owed to Timothy.

## STATEMENT OF THE CASE

On 19 January 1993, Howard and Carol Hoffman filed a wrongful death complaint against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq. The Hoffmans allege that the government was negligent and caused the death of their son, Timothy, at the Camp Lejeune Marine Corps Base on the afternoon of 12 December 1989. Specifically, the Hoffmans allege that the government was negligent in the operation of its bookmobile.

On 30 April 1993, the government answered the complaint and filed a third-party complaint against Airway Moving and Storage, Inc. (Airway), the owner of the truck that struck and killed Timothy. The government denies liability and alleges that Airway was negligent and caused Timothy's death. The Hoffmans did not file any claims against Airway. The government's claim against Airway is premised upon the court's finding a basis for liability against the government. Granting the government's summary judgment motion would therefore dispose of the case in its entirety.

## PROPOSED FINDINGS OF FACT

The government operates a mobile library, known as the bookmobile, at Camp Lejeune, North Carolina. The obvious purpose of the bookmobile is to give children library service closer to their homes. One of the bookmobile's regularly scheduled stops is on Alabama Avenue in the Berkeley Manor neighborhood.

On 12 December 1989, the bookmobile parked in the westbound lane on Alabama Avenue. Les Williams was the driver of the bookmobile. Williams chose to park the bookmobile on the travel portion of the street, despite having the option to park it on the non-travel portion along the street.

The government was violating its own policy by not having the words "Watch for Children" painted on the bookmobile. In addition, the bookmobile had mechanical problems. A malfunction in the wiring system caused the battery to run down if the hazard lights were utilized for even a short period of time. The gas generator did continue to run, however, creating additional noise.

Frances L. Bing was the librarian in charge of the bookmobile at the Alabama Avenue stop. This stop was very busy, with twenty to thirty people coming on board in thirty minutes' time. Approximately eighty percent were children. Although the bookmobile was permitted to park on Alabama Avenue, other vehicles generally were not allowed to park along the street.

The bookmobile is a bus painted orange and white. Two doors are on the right side of the bookmobile; the back door is for entering, and the front door is for exiting. The bookmobile is arranged so that the driver and librarian can talk to each other and the visitors. Bing's policy and usual practice was to stop children from exiting the back, entrance door.

At approximately 4:00 p.m. on 12 December 1989, Timothy opened the side back door

of the bookmobile, placed his hand on the stair rail, leaned in, and asked Bing if his brother was on the bookmobile. Bing said no. Timothy turned and left before Bing could stop him from exiting the entrance door. He ran around the back of the bus, crossed the westbound lane, and was struck by the Airway truck, which was heading east. Timothy was taken to the hospital and pronounced dead at 5:21 p.m.

Williams saw Timothy step on the bookmobile. He also saw the Airway truck approaching at about fifteen to twenty miles per hour. Williams did not warn Timothy of the approaching truck.

The truck that hit Timothy was owned by Airway and driven by John Martin. Another Airway employee, Raymond D. Witt, was a passenger in the truck. Martin and Witt were looking for a house on Alabama Avenue. Martin saw the bookmobile. He knew that children congregated around the bookmobile, because he had seen it on Alabama Avenue before. Martin saw no children in or around the bookmobile. As Martin drove past the bookmobile, Timothy appeared in front of the truck and was struck before Martin could apply the brakes.

## PROPOSED CONCLUSIONS OF LAW

The United States waived its sovereign immunity from liability in tort with the enactment of the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 1346(b), 2671, et seq. The FTCA gives plaintiffs the option of suing the government in federal courts under some circumstances. Specifically, the FTCA allows for recovery against the government for loss of property, personal injury, or wrongful death caused by federal employees' negligent or wrongful acts while acting within the scope of their employment. 28 U.S.C. § 1346(b). The FTCA essentially imposes liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The court must therefore look to the law of the state where the claim arises to determine liability.

The events surrounding this action occurred in Camp Lejeune, North Carolina.

In North Carolina, negligence is the "failure to exercise proper care in the performance of a legal duty which [a] defendant owe[s] the plaintiff under the circumstances surrounding them." Hull v. Oldham, 104 N.C.App. 29, 407 S.E.2d 611 (1991).

The government filed a motion to dismiss and, in the alternative, for summary judgment. Airway has filed a motion for summary judgment. Since affidavits and material other than the pleadings have been submitted in support of the motions, the court will treat all motions as motions for summary judgment. Fed.R.Civ.P. 56.

Summary judgment must be granted if, after an adequate time for discovery, "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Rule 56(c) requires an examination of the entire record including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. The court must also consider every inference that can be drawn from this evidence. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985).

The non-moving party, however, cannot "rest on the mere allegations" of the pleadings, but must produce "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment is appropriate. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Government's Liability*

As stated above, the Hoffmans must show that the government breached some legal duty owed to Timothy and that this breach caused Timothy's death. *Hull,* 104 N.C.App. at 29, 407 S.E.2d 611. The Hoffmans contend that the government had a legal duty to (a) park the bookmobile in the non-travel portion of the street, (b) equip the bus with warning lights and signs, (c) force Timothy to exit the proper door or warn him of oncoming traffic if he exited the wrong door, and (d) prevent the bookmobile from creating any loud noise so as to allow pedestrians to hear oncoming traffic.

The Hoffmans specifically contend that the government owed Timothy the duties an owner owes to individuals visiting the premises. The standard of care an owner of premises owes to a visitor depends on whether the visitor's status is an invitee, licensee, or trespasser. *See Hoots v. Pryor,* 106 N.C.App. 397, 417 S.E.2d 269, *review denied,* 332 N.C. 345, 421 S.E.2d 148 (1992). The government argues, however, that this distinction is irrelevant, because Timothy was hit in the street. An owner owes no duty to a person injured or killed off premises. *Laumann v. Plakakis,* 84 N.C.App. 131, 351 S.E.2d 765 (1987).

The government further argues that the most appropriate analysis is the one enunciated in *White v. Chappell,* 219 N.C. 652, 14 S.E.2d 843 (1941). The *White* case involved a parked bus and had facts similar to this case. In *White,* a passenger bus stopped to let a mother and her eight-year-old child get off, across the street from their destination. *Id.* at 654, 14 S.E.2d 843. While the mother was gathering her things, the child got off and walked behind the bus, started across the street, and was hit by a car travelling in the lane opposite the bus. *Id.* at 654–55, 14 S.E.2d 843.

The Court held in *White* that a common carrier's duty was based on negligence. *Id.* at 659–60, 14 S.E.2d 843. Although the bus owes its passengers the highest degree of care, it does not absolutely insure their safety. *Id.* The carrier's duty ends when the passenger exits the bus in a safe place. *Id.*

The bookmobile is not a common carrier, but more like a library that is parked on the side of the street. Indeed, an appellate court in Ohio compared a bookmobile to a store. *Mathis v. Cleveland Public Library,* 46 Ohio App.3d 168, 546 N.E.2d 451 (1988). The court does not need to decide whether the standard applied to the bookmobile is defined as premises or motorist liability, because either way the bookmobile has a duty to provide a safe place for its visitors to enter and exit. *White,* 219 N.C. at 659, 14 S.E.2d 843; *Laumann v. Plakakis,* 84 N.C.App. 131, 351 S.E.2d 765 (1987). Once the visitor exits safely, the bookmobile's duty ends. *Id.*

The court in *Mathis* is persuasive authority that supports this standard. In *Mathis,* eight year old Kevin Mathis was struck and killed by a car while attempting to cross the street after leaving a bookmobile. 46 Ohio App. at 168, 546 N.E.2d 451. The plaintiffs also argued that the bookmobile had a duty to provide better warning devices and park off the street. *Id.* at 168, 546 N.E.2d 451. The court found that the warning devices would not have helped and held that the bookmobile need only park safely along the street. For the bookmobile to serve its purpose, it is inevitable for children to cross the street. *Id.* The bookmobile's duty simply did not extend to preventing all conceivable hazards associated with children crossing streets to get to and from the bookmobile. *Id.* at 169, 546 N.E.2d 451.

The bookmobile at issue was legally parked, because it had permission to park along Alabama Avenue. Despite the government's contention, however, this fact does not completely dispense with the liability issue. Legal conduct may still under some circumstances be negligent. Nonetheless, the bookmobile was parked so that the visitors entered and exited on the grass, separated from traffic by the bus. They could then travel across the grass or go around the bus to cross the street, depending on their destination.

To carry out its function, the bookmobile has to park somewhere, and children must travel within their neighborhood to get there. Crossing the street is inevitable. The bookmobile has a duty to park in a manner that

allows the children to enter and exit in a safe place, but cannot be held responsible for the manner in which children choose or are allowed to get to and from the bookmobile. *Id.* The government fulfilled its duty in this case by parking so that children had a grassy area separated from the traffic to enter and exit the bookmobile.

The Hoffmans next claim that the bookmobile breached its duty to equip the bus with flashing lights and a warning sign. The bookmobile is larger than normal residential traffic, and its bright color makes it quite noticeable. Additional warning devices may be useful, but are not necessary for the safe operation of the bookmobile.

Even if the government had a duty to provide these devices, however, the Hoffmans have not presented evidence that a lack of warning devices caused the accident. In fact, Airway admits that the driver saw the bookmobile, but was still unable to see Timothy. The bookmobile was visible to the driver. He admits that he was aware of the danger and claims to have taken every precaution. The Hoffmans have failed to show that Martin would have done more in response to additional warning devices.

The bookmobile had a policy that children were to enter from the back and exit from the front. Bing was unable to prevent Timothy from exiting the back. The court refuses to find that Bing had an absolute duty to prevent Timothy from exiting the back.

Moreover, the court also finds that the attendants on the bookmobile had no duty to warn Timothy of the approaching truck. Children have to cross the street to get to the bookmobile. The attendants cannot be responsible for warning each child of every potential danger that exists as the child leaves the bookmobile. Nor can they carry out their duties effectively while acting as crossing guards.

Even if this duty existed, Bing's failure to stop or warn Timothy was inconsequential. The court has already held that the bookmobile was parked where visitors could enter and exit in a safe place. Exiting from the front does not insure that motorists are driving by safely or that the children will cross

the street safely. Nothing indicates that Bing's failure to force Timothy to exit the proper door caused the accident. Indeed, exiting the proper door and crossing the street from the front would create the same hazard when cars approach from behind the bus.

The Hoffmans' last allegation is that the noise created by the generator prevented Timothy from hearing the oncoming truck, causing the accident. The court refuses to establish a precedent that requires peace and quiet for the benefit of persons crossing the street. Indeed, it would be dangerous to do anything that would encourage children to stop and listen, instead of the traditional instructions to stop and look both ways before crossing the street. Loud noises are created by passing traffic and airplanes flying overhead. Are they to be held liable for accidents when they prevent a child from hearing oncoming traffic? Because the Hoffmans have failed to show a genuine issue of material fact concerning the government's potential liability, the motion for summary judgment should be allowed.

### Airway's Potential Liability

The government contends that Airway's negligence caused Timothy's death. The government alleges that Martin was looking for a house number and failed to keep a proper look out. In addition, he was supposedly exceeding the safe speed and had too little brake fluid. These contentions are without merit.

Martin admits that he was looking for a house number. He also states that he saw the bookmobile, recognized the potential that children were about, looked carefully, and saw no one until Timothy appeared in front of the truck. The governments only evidence that Martin acted otherwise is its contention that the six to twelve feet between the bus and point of impact gave Martin time enough to see Timothy and stop before impact. This contention is simply part of the government's argument and is not based on any evidence before the court. Since the government has produced no evidence to support its contention that Martin had time to stop, it has also failed to show that the

lack of brake fluid, or even the absence of brakes, caused the accident.

Martin stated that he was going fifteen to twenty miles per hour. The government's employee, Williams, confirmed this statement. The only evidence to the contrary is based on unidentified notes of a phone conversation with a witness. The phone conversation is hearsay, since it is an out-of-court statement offered to prove that Martin was speeding. Fed.R.Evid. 801(c). The evidence is therefore inadmissible and incompetent to oppose summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

The court cannot presume that Airway was negligent simply because Martin struck and killed Timothy after he darted into the path of the truck. *Phillips v. Holland,* 107 N.C.App. 688, 691, 421 S.E.2d 608 (1992), *aff'd,* 333 N.C. 571, 429 S.E.2d 347 (1993). "[T]here must be some evidence that the motorist could have avoided the accident by the exercise of reasonable care under the circumstances" in order to survive a motion for summary judgment. The government has presented none. The motion for summary judgment should be granted as to Airway.

*Contributory Negligence*

The doctrine of contributory negligence bars recovery by a plaintiff who contributes to the injury as a proximate cause. *Griffin v. Ward,* 267 N.C. 296, 299, 148 S.E.2d 133, 135 (1966). A person is contributorily negligent when he contributes to the cause of his injury by failing to exercise ordinary care for his own safety against the resulting injury. *Keener v. Beal,* 246 N.C. 247, 98 S.E.2d 19 (1957). The negligence does not have to be the sole cause, nor does it have to be a substantial cause, simply one of the proximate causes. *Wallsee v. Carolina Water Co.,* 265 N.C. 291, 297, 144 S.E.2d 21, 26 (1965).

If the court finds that a genuine issue exists as to the bookmobile's liability, the issue of contributory negligence would arise. Timothy was seven years old at the time of his death. A rebuttable presumption exists in North Carolina that a child between the ages of seven and fourteen is incapable of contributory negligence. *Hoots v. Beeson,* 272 N.C. 644, 648, 159 S.E.2d 16 (1968). The

question of whether of a child between the ages of seven and fourteen is contributorily negligent is " 'a question of fact to be answered by the jury in the light of the intelligence, age, and capacity of the intestate.' " *Id.* (quoting *Hughes v. Thayer,* 229 N.C. 773, 777, 51 S.E.2d 488 (1949)). The government's motion for summary judgment should be denied if this question arises.

### CONCLUSION

The government's motion for summary judgment should be allowed. The bookmobile provided a safe place for its visitors to enter and exit. Once a visitor exits in a safe place, the bookmobile's duty ends. *White,* 219 N.C. at 659–60, 14 S.E.2d 843.

If the court were to further extend the bookmobile's duty to find that the a genuine issue exists concerning the government's liability, Airway's motion for summary judgment should be allowed. The government's motion for summary judgment should be denied, however, on the basis of contributory negligence. *Id.*

MEMORANDUM AND RECOMMENDATION ENTERED, this 5th day of May, 1994.